Rex ALLEN, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 92–CA–3104–MR.

Court of Appeals of Kentucky.

April 7, 1995.

Rehearing Denied July 14, 1995.

R. Lee Greenup, Paris, for appellant.

Chris Gorman, Atty. Gen., Laura Early, Asst. Atty. Gen., Frankfort, for appellee.

Before DYCHE, JOHNSON and SCHRODER, JJ.

DYCHE, Judge.

Rex Allen appeals from a judgment and sentence of the McCracken Circuit Court convicting him of Criminal Abuse in the First Degree (KRS 508.100) and sentencing him to seven years' imprisonment.

Allen raises two contentions of trial court error on appeal. First, appellant argues the trial court erred when it overruled his "Motion to Dismiss Indictment or in the Alternative for a New Trial," filed November 30, 1992, on the grounds the trial court had improperly delegated authority to disqualify, postpone or excuse potential grand jurors to the Court Administrator. Secondly, appellant contends that the introduction into evidence at trial of an inaccurate model of the paddle used on Marcus Jackson, the victim, was prejudicial error. Finding merit to the first argument but not the second, we reverse and remand.

Rex Allen was indicted on the charge of Criminal Abuse in the First Degree (KRS 508.100) by the McCracken County Grand Jury on June 30, 1992. A jury trial held on October 5–6, 1992, resulted in his conviction. Thereafter, on November 30, 1992, prior to his sentencing, Allen filed a "Motion to Dismiss Indictment or in the Alternative for a New Trial" alleging that the Grand Jury which indicted him was selected contrary to KRS 29A.080, KRS 29A.100 and Administrative Procedures of the Court of Justice, Part II, sections 8 and 12. In support of his motion, Allen cited *Commonwealth v. Nelson*, Ky., 841 S.W.2d 628 (1992) rendered by the Supreme Court of Kentucky on November 19, 1992.

The trial court gave counsel for Allen until December 11, 1992, to present proof in support of the motion. On that date, counsel filed the affidavit of Ms. Kimberly Mick, the McCracken County Court Administrator. The affidavit reads as follows:

1) I am the Court Administrator for McCracken County.

2) The following procedure was used in McCracken County to select grand jurors in this case:

a) In August a request is sent to Frankfort for fourteen (14) lists containing two hundred twenty-five (225) jurors. These lists are randomly selected by the computer in Frankfort from a list compiled from the voter registration and the driver's license lists from McCracken County. Fourteen (14) lists are selected, one for each month of the year and two (2) alternates.

b) Frankfort sends the lists in September. At that time, the McCracken Circuit Clerk's office and I prepare the juror summons to be sent. Each summons includes a questionnaire which must be returned.

c) The McCracken County Sheriff's office then sends the summons out to be received by the juror one month before the date they are summoned to appear to serve on jury duty.

3) When the jury questionnaires are returned, I make decisions regarding which jurors should be excused or transferred to another month based on past practice of the Judges. This includes the excuses delineated by court rules and statutes.

4) Only if I have questions about the court rules or statutes do I take the questionnaire to the Judge for him to make the determination on whether to excuse the juror.

5) There is no way to determine from looking at the questionnaire whether I excused the juror or the judge excused the juror.

6) Once the decisions regarding excuses are made from the questionnaire, I prepare a list of jurors that will be present on the first court day of the month.

7) Once the jurors have appeared in Court, the Judge makes all determinations regarding excuses and they are recorded in the court record.

8) The Grand Jurors are selected every odd month and serve for two months. Therefore, the Grand Jurors that served in June were all selected in May and came off the May list.

9) My records reveal that in May of 1992, of the 225 summons sent:

Forty-four (44) were returned unclaimed;

Fifteen (15) were not returned;

Thirty-seven (37) were excused by the Judge or myself for medical reasons.

Twenty-six (26) I disqualified;

Ten (10) were excused by either the Judge or myself;

Nineteen (19) transferred in from previous months; and

Twenty-four (24) were transferred to another month.

10) I presented the Judge with Eighty-seven (87) jurors on the first day of May and he excused two (2).

11) There are no published orders, opinions, and/or letters delegating to me the responsibility to excuse jurors. However, I did have verbal authority from the judges to excuse jurors in accordance with court rules and statutes.

/s/ Kimberly Mick

In *Nelson,* the Supreme Court clearly held that the authority to determine which jurors should be disqualified, postponed or excused cannot be delegated to administrative personnel. Such a delegation constitutes a substantial deviation from the statutes and rules which vest discretion in the hands of a judge, not a court administrator. If the error is preserved for review, such an improper delegation is to result in a reversal of the conviction. *See Nelson, supra,* at 631–32. Despite the submission of Ms. Mick's affidavit on December 11, 1992, Allen's "Motion to Dismiss Indictment or in the Alternative for a New Trial" was overruled by the trial court just prior to sentencing on December 21, 1992.

That brings us to appellant's first contention of error, which appellee contends was not preserved. We disagree. As noted by the Supreme Court in *Nelson, Bartley v. Loyall,* Ky.App., 648 S.W.2d 873 (1982) indicates that irregularities with respect to the jury, which are first discovered after trial, may be raised at that time in a motion for a new trial. *Nelson, supra,* at 632. Although *Bartley* involved the method by which *petit* jurors were selected, it is comparable to the facts herein as it relates to the preservation issue.

The complaining party, Rex Allen, neither knew, nor by reasonable diligence could have known, the grounds for challenge to the grand jury selection process before or during his trial. Since there was no published delegation of the power to grant grand juror disqualification, postponement or excusal, only an interrogation of the court administrator or judge would lead counsel to suspect some irregularity. *Bartley, supra,* holds that reasonable diligence does not require such questioning.

[I]t appears that the only way the appellants could have become aware of how the jurors were selected for duty would have been to question the circuit judge or the circuit clerk. We do not believe that reasonable diligence requires an attorney to question the clerk or judge of the court about how jurors were chosen for duty

where there is nothing otherwise to lead him to suspect some irregularity. To hold otherwise would, no doubt, result in such questioning by conscientious attorneys in every case in order to guard their clients against a species of error which is, after all, quite rare.

648 S.W.2d at 876.

Following the release of the Supreme Court's decision in *Nelson* on November 19, 1992, Allen's trial counsel pursued the only avenue available to her before entry of a final judgment and sentence. Based on this recent decision, and with Ms. Mick's affidavit as proof, she moved for dismissal of the indictment.

SCR 1.030(8) requires us to follow the decisions of our highest court, and accordingly we hold that the issue of improper delegation was indeed timely preserved and the trial court's failure to grant appellant's "Motion to Dismiss the Indictment," under the circumstances, was reversible error.

We will address appellant's second contention of error for purposes of retrial should a new indictment be rendered. Appellant contends that he was substantially prejudiced by the admission into evidence of a model of a paddle used to abuse Marcus Jackson. Appellant's specific argument on appeal is that the model entered into evidence was not an accurate replica of the paddle, and that a proper foundation was not laid for its introduction. Appellee, on the other hand, argues that the issue is not preserved for appellate review because defense counsel's objection at trial was merely that the model was not the actual paddle, not that the model was inaccurate. Appellee's secondary position is that the testimony of Detective Gary Reese, Quincy Jackson, Kendrick Jackson and Richard Agnew established the model to be a true replica.

■ It is our opinion that defense counsel's objection to the model paddle at trial was insufficient to preserve the issue now raised on appeal. Nevertheless, RCr 10.26 states:

A palpable error which affects the substantial rights of a party may be considered by the court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error.

Hence, we have undertaken a review of the issue now raised on appeal, pursuant to RCr 10.26, in order to determine if a palpable error has occurred resulting in manifest injustice; and having thoroughly examined the transcript of evidence, we conclude that it has not.

■ The model paddle was admitted into evidence as Commonwealth's Exhibit 4 during the testimony of Quincy Jackson, Marcus's brother, who was ten (10) years old at the time of trial. His testimony on direct examination was as follows:

Q.33 I want to show you what we have labeled as Commonwealth's Exhibit 4, Quincy. Does this look like the black thing that you were whipped with by Rex and Faye and Nicky?

A. Yes.

Q.34 Is there any difference in what they would whip you with and this, the black thing they had and this?

A. It wasn't as ... It would bend easily.

Q.35 Now, you say it would bend more easily, so that it would bend like this more easily.

A. Um-hum. (affirmative).

Q.36 Was it about this long?

A. Yes.

Q.37 And was it about this wide?

A. Yes.

MR. KALTENBACH: YOUR HONOR, THE COMMONWEALTH WOULD MOVE TO ADMIT COMMONWEALTH'S EXHIBIT 4.

THE COURT: DO YOU HAVE ANY RESPONSE, MS. COOPER?

MS. COOPER: SHOW MY OBJECTION AS THAT'S NOT THE PADDLE THAT WE'RE DISCUSSING.

THE COURT: MR. JACKSON, THE PADDLE THAT YOU WERE STRUCK WITH, DID YOU EVER PICK IT UP AND FEEL OF IT? DID YOU EVER HAVE IT IN YOUR HAND?

MR. JACKSON: NO.

THE COURT: OKAY. IT MAY BE ADMITTED.

Kendrick Jackson, Quincy's eight (8) year old brother, later testified on direct examination as follows:

Q.23 What were the boys whipped with?

A. A big old black thing.

Q.24 A big old black thing?

A. Yes.

Q25 Does this look like the big old black thing?

A. Yes.

Richard Agnew, a defense witness and co-worker of Rex Allen who saw the real paddle being made, having testified regarding the dimensions of the real paddle, was asked:

THE COURT: MR. AGNEW, THERE'S BEEN OFFERED HERE A PADDLE THAT'S STATED IS COMPARABLE TO THE ONE HE MADE. AT THIS TIME I'D ASK THE COURT REPORTER TO HAND THAT TO YOU AND FOR YOU TO EXAMINE IT AND TELL THE JURY HOW THAT COMPARES TO THE OBJECT YOU OBSERVED MR. ALLEN MAKING IN NOVEMBER AT THE TVA PLANT.

(PADDLE HANDED TO WITNESS BY REPORTER)

MR. AGNEW: IT LOOKS ABOUT TWICE AS THICK AS WHAT THE PADDLE WAS THAT I SAW REX MAKING. YOU KNOW, WHEN I LOOKED AT IT, IT LOOKS AT LEAST TWICE AS THICK, BUT YEAH, THAT'S ABOUT WHAT IT IS.

THE COURT: BUT OTHER THAN THE THICKNESS, IT WOULD BE ABOUT THE SAME?

MR. AGNEW: YES, SIR.

The Commonwealth's position that the model was established to be a true replica in accord with *Hogan v. Cooke Pontiac Company*, Ky., 346 S.W.2d 529 (1961), is supported by the record. Any evidence to the contrary goes to weight, not admissibility. We find that no palpable error resulting in manifest injustice occurred as a result of the model paddle being introduced into evidence.

The judgment of the McCracken Circuit Court is reversed and the case remanded thereto for dismissal of the indictment.

All concur.